# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| QUANDARIS FORD, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CV414-056 |
| CAROLYN COLVIN,<br>Acting Commissioner of<br>Social Security, | ) ) ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Alleging disability due to attention-deficit, hyper-activity disorder (ADHD), *pro se* plaintiff Quandaris Ford (through his mother Shineka Ford) seeks judicial review of the Social Security Commissioner's denial of his application for Supplemental Security Income (SSI) benefits. Docs. 1; 15.[1] That denial followed his exhaustion of administrative remedies, doc. 12-2 at 2, so his claims are now ripe for judicial review.

## I. GOVERNING STANDARDS

In social security cases, courts:

---

[1] The Court is citing to its docketing software's pagination; it does not always line up with each paper document's printed pagination.

> review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the underage claimant. *T.R.C. ex rel Boyd v. Comm'r, Soc. Sec.. Admin.*, 553 F. App'x 914, 919 (11th Cir. Jan. 28, 2014). To meet that burden, he must:

> establish (1) whether the child is working; (2) whether the child has a severe impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the Listing of Impairments. 20 C.F.R. § 416.924(a).

*Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015).

> To functionally equal an impairment in the List of Impairments, a claimant must have marked limitations in two domains or an extreme limitation in one of the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself; and (6) health and

physical well-being. *See id.* § 416.926a(b)(1), (d). A child's limitation is "marked" where it is "more than moderate," but "less than extreme" and "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i).

*T.R.C. ex rel. Boyd*, 553 F. App'x at 918.

## II. BACKGROUND

Ford, ten and in the fourth grade at the time of the administrative law judge's (ALJ) final decision denying benefits, doc. 12-2 at 21, claims difficulty in learning, reading and understanding, writing in longhand, and changing money, among other areas. Doc. 12-6 at 23. His mother reports that he cannot make new friends and had to be taken out of baseball because he could not get along with his teammates. *Id.* at 25. Although he takes Adderall for his condition, when off the medicine, Ford loses focus, has violent mood swings, and "the disability takes over." *Id.* at 38.

Nevertheless, despite some disciplinary issues and "a bad habit of blurting out in class," doc. 12-7 at 56-57, plaintiff's school records reflect A's, B's, and C's, with a GPA of 75. Doc. 12-6 at 45. While on Adderrall, school "go[es] well," and he is more focused. Doc. 12-7 at 9. Overall, he

is "[d]oing well and meeting milestones." *Id.*

Ford filed for disability benefits on April 11, 2011, alleging a disability onset that same day. Doc. 12-2 at 9. Following an administrative denial, his mother testified at a hearing on March 11, 2013 before the ALJ, who later denied his application. *Id.*

After finding that Ford had not engaged in substantial gainful activity since the onset of disability, the ALJ determined that Ford's ADHD and Opposition Defiant Disorder (ODD), but not his asthma, qualified as a severe impairments. *Id.* at 12. They did not, however, meet or medically equal the severity of a listed condition in 20 C.F.R. §§ 924-26. *Id.* at 13.

The ALJ then assessed whether Ford's impairments functionally equaled a listed condition (step three). *Id.* He explained that he considered all the medical evidence, which confirmed some limitation due to ADHD and ODD. *Id.* at 14. He evaluated Ford's mother's testimony and made credibility determinations based on the medical evidence as well as statements he found inconsistent with that evidence. *Id.* The ALJ also evaluated the opinions of evaluating psychologist, Dr. Daniel

Nagelberg, and two state psychological consultants, Drs. Richard Marting and Morgan Kyle, and assigned them "significant weight" because they were consistent with Ford's function report, and school and medical records. *Id.* at 15. Ultimately, the ALJ found no functional equivalence, and thus no disability, because Ford's impairment did not result in "marked" limitations in two of six functional domains or an "extreme" limitation in one domain. *Id.* at 20.

## III. ANALYSIS

### A. Plaintiff's Deficient Brief Bars Relief

Ford's complaint suffers from two non-substantive yet fatal flaws: (1) he failed to comply with the Court's briefing order (doc. 13), and (2) his brief's many deficiencies result in waiver of all issues he might have raised. The briefing order instructed that the parties' include a statement of issues; a statement of the case, including the course of proceedings and a general facts statement (itself to include basics such as the plaintiff's age, summary of impairments, and a brief outline of the medical evidence) supported by citation to the record; an argument supported by reference to the record; and a conclusion in their briefs.

5

Doc. 13 at 3-4. And, importantly, it stated explicitly that "[t]he issues before the Court are limited to the issues properly raised in the briefs." *Id.* at 4.

Ford's brief violated every single one of those instructions. It contains no facts, just more evidence (school records primarily) that's duplicative of that in the administrative record.[1] *See, e.g.*, doc. 14 at 5-18. It contains no statement of the issues at all, only that Ford's mother is "highly dissatisfied with the Defendant's Statements." *Id.* at 30. And, it contains no argument, only a conclusion that the ALJ's denial is "dissatisfied to the plaintiff's evidence." *Id.* at 31. Those failures alone warrant dismissal. *See* Fed. R. Civ. P. 41(b) (authorizing dismissal for neglect of any Court order); *Mingo v. Sugar Cane Growers Co-op*, 864 F.2d

---

[1] Defendant correctly notes that a substantial evidence review is limited to the record made at the administrative level, though the Court may under some circumstances remand for the Commissioner to consider the new evidence. *See Caulder v. Brown*, 791 F.2d 872, 876 (11th Cir. 1986). Those circumstances are not present here because, although relevant, the evidence Ford's mother attached to his brief is cumulative and/or postdates the ALJ's decision. *See id.* (remand to consider new evidence only appropriate if claimant establishes "(1) there is new, noncumulative evidence; (2) the evidence is "material," that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, *and* (3) there is good cause for the failure to submit the evidence at the administrative level") (emphasis added). The evidence therefore cannot be considered, nor does it warrant remand. Regardless, even if the Court took it into account, it would not undermine the conclusion that substantial evidence supports the ALJ's decision because it adds nothing new to the picture.

101, 102 (11th Cir. 1989); *see also Zow v. Regions Fin. Corp.*, 2014 WL 589567 at * 1 (S.D. Ga. Feb. 14, 2014) (citing *Moon v. Newsome*, 863 F.2d 835, 838 (11th Cir. 1989) (*pro se* plaintiffs' repeated refusal to conduct Rule 26(f) conference after the Court ordered them to do so resulted in dismissal)); *Owens v. Morales*, 2015 WL 5040245 at * 2 (S.D. Ga. Aug. 25, 2015) (failure to "abide by . . . the Federal Rules of Civil Procedure" warrants Rule 41(b) dismissal).

Those failures also result in waiver of any issues Ford might have raised. Certainly *pro se* briefs must be read liberally, but "issues not briefed on appeal by a pro se litigant are deemed abandoned." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). And Ford raises no issues (much less presents argument) outside of dissatisfaction with denial. Faced with such across-the-board deficiencies -- and particularly given the Court's specific admonition that it would consider only briefed issues, doc. 13 at 4 -- the Court concludes that plaintiff waived any issues he has with the Commissioner's denial. *See Enriques v. United States*, 416 F. App'x 849, 850 (11th Cir. 2011) ("[I]ssues not argued by a pro se litigant in his initial brief are deemed waived.").

### B. Substantial Evidence Supports the Commissioner's Denial

Even ignoring those fatal deficiencies, Ford's claim fails on its merits because substantial evidence justifies the ALJ's no disability finding. First, the ALJ properly concluded that Ford's ADHD did not meet or medically equal listing 112.11 (ADHD).[2] *See* doc. 12-2 at 13; 20 CFR pt. 404 subpt. P, app. 1, § 112.11 (ADHD listing requiring claimants to have "marked" inattention, impulsivity, and hyperactivity). He considered, and gave significant weight to, the opinions of Drs. Marting and Kyle, who both found that Ford did not meet listing 112.11. *See* doc. 12-2 at 13; doc. 12-7 at 40; 20 C.F.R. § 416.927(e)(2)(i) (ALJs must consider the findings and opinions of non-examining state medical consultants who are considered Social Security disability evaluation experts). Indeed, all the medical evidence available to the ALJ supports his conclusion that Ford did not meet listing 112.11 (doc. 12-2 at 13)

---

[2] The Commissioner found steps one and two satisfied, so any possible issue Ford has (again, he "argues" only general "dissatisfaction" with denial) must lie with the finding that his ADHD did not meet or functionally equal a listed impairment. *See* doc. 12-2 at 20.

despite his ADHD diagnosis.³ *See, e.g.*, doc. 12-7 at 33 (ADHD follow-up exam showing "[s]lightly [but not markedly] reduced attention span and concentration," fluent and normal speech, normal memory, normal knowledge of current and past events, and normal cognition); *id.* at 36 (psychometric testing showed that Ford "understood and followed instructions without difficulty," and "completed all tasks . . . without becoming overly frustrated," though he "was off task fairly easily and was fairly active at the table"). "While the record clearly demonstrates that [Ford] has problems with inattention, impulsivity, and hyperactivity, there are no medically documented findings or opinions demonstrating that those problems meet the severity requirements of Listing 112.11. Accordingly, the Court finds that substantial evidence supports the ALJ's finding that [Ford]'s severe impairments do not meet or medically equal any listing." *Turner ex rel BDT v. Comm'r of Soc. Sec.*, 2012 WL 1004841 at * 15 (M.D. Fla. 2012) (cites omitted).

Second, substantial evidence supports the ALJ's finding that Ford's ADHD did not functionally equal a listed impairment. The ALJ found no

---

³ The ALJ also found that Ford's ODD diagnosis -- itself not a listed impairment like ADHD -- did not meet or medically equal a listed mental disorder. Doc. 12-2 at 13. That finding too is supported by substantial evidence.

9

limitations in three functional domains: (1) acquiring and using information (doc. 12-2 at 16); (2) moving about and manipulating objects (*id.* at 19); and (3) caring for himself. *Id.* at 19. He found some, but less than marked, limitations in the remaining three: (1) attending and completing tasks (*id.* at 17); (2) interacting and relating with others (*id.* at 18); and (3) health and physical well-being. *Id.* at 20). All six findings should be affirmed.

  1.  *Acquiring and Using Information*

This domain concerns how well a child acquires and learns information and how well he uses the information he has learned. *See* 20 C.F.R. § 416.926a(g). It involves how well a child perceives, thinks about, remembers, and uses information in all settings, including home, school, and in the community. *Id.*[4]

---

[4] As the ALJ noted:

> [the regulations provide] that a school-age child[, like Claimant] (i.e., a child age 6 to the attainment of age 12) without an impairment should be able to learn to read, write, and do math, and discuss history and science. The child will need to use these skills in academic situations to demonstrate what he has learned by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. The child will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). The child should be able to use increasingly

Neither Dr. Marting or Dr. Kyle found limitations in this domain, *see* doc. 12-7 at 42, 48, nor did Dr. Nagelberg,[5] who opined that Ford (1) was able to understand and remember instructions "at a rate comparable to his peers," (2) could communicate his needs to others, and (3) scored within the low-average to average ranges on a variety of intellectual indices. Doc. 12-7 at 36, 39. Too, he receives average grades, as well as reading and math scores. Doc. 12-6 at 45; doc. 12-7 at 38 (while in second grade Ford read at a second to ninth grade equivalent, and performed math computation a third to seventh grade equivalent). In fact, Ford

---

complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing his own ideas, and by understanding and responding to the opinions of others.

Doc. 12-2 at 15-16; *See* 20 C.F.R. § 416.926a(g)(2)(iv); Social Security Ruling (SSR) 09-3p, 2009 WL 396025 at * 5 (S.S.A. Feb. 17, 2009).

[5] Dr. Nagelberg examined Ford, unlike Drs. Marting and Kyle who merely evaluated relevant school and medical records. Both examining and consultative expert reports must be considered by an ALJ, *see* 20 C.F.R. § 404.1527(f), but "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006); *see also Richardson v. Perales*, 402 U.S. 389, 402 (1971) ("[A] written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing and . . . may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant. . . .").

only scored "deficient" in one category out of ten on the Wechsler Intelligence Scale for Children; he scored low average or above (including a "superior" score in verbal comprehension) in all other categories. *See id.* Other than his mother's conclusory disability assertions, nothing in the record suggests marked limitations on his information acquisition. Substantial evidence therefore supports the ALJ's "no limitation" conclusion for this domain. *Cf. Parks ex rel D.P.*, 783 F.3d at 851-52 (less than marked limitation in acquiring and learning information where child had difficulty functioning independently, needed some special education services and testing accommodations, only did homework with assistance, but maintained passing grades and was "progressing toward the standards" in all subjects save one).

    2. *Attending and Completing Tasks*

Assessing this domain requires inquiry into how well a child is able to focus and maintain his attention, and how well he begins, carries through, and finishes his activities, including the pace at which he performs activities and the ease with which he changes them. *See* 20 C.F.R. § 416.926a(h); *Bryant v. Soc. Sec. Admin.*, 478 F. App'x 644, 646

(11th Cir. 2012); SSR 09-4p, 2009 WL 396033 at * 1 (S.S.A. ). Among other things, a school aged child without impairment should be able to focus his attention in a variety of situations in order to follow directions; remember and organize school materials; complete classroom and homework assignments; concentrate on details; not make careless mistakes in his work (beyond those expected in non-impaired children of the same age); and change activities or routines without distraction. *See* 20 C.F.R. § 416.926a(h)(2)(iv); SSR 09-4p, 2009 WL 396033 at * 5.

The ALJ, relying on the opinions of Drs. Marting, Kyle, and Nagelberg, found less than marked limitations in this domain. Doc. 12-7 at 42, 48. All three experts, while considering Ford's ADHD symptoms, his difficulty getting along with others, and evidence that Adderall significantly improved his symptoms,[6] *see* 20 C.F.R. § 416.929(c)(3)(iv) (ALJs may consider medication efficacy in evaluating symptoms); *Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (same), concluded that Ford "was generally motivated," doc. 12-7 at 36, and "able to complete[] all tasks . . . without becoming overly frustrated or upset." *Id.* Only

---

[6] Indeed, Ford's mother testified that when he "takes the drug, he's like a normal kid in terms of focusing." Doc. 12-2 at 35.

Ford's mother's testimony evidenced the opposite, though the ALJ properly discredited it due to inconsistencies with the medical evidence. *See* doc. 12-2 at 15.

Although Ford's "ability to sustain attention and complete tasks" may well be "compromised," doc. 12-7 at 39, "more than a scintilla" of evidence supports the ALJ's "less than marked limitations" finding in the "attending and completing tasks" domain. *Cf. Bryant*, 478 F. App'x at 646 ("less than marked" finding in the tasks domain appropriate where child "was easily distracted and had a short attention span," but "had only slight problems paying attention when spoken to, focusing on finishing tasks, taking turns, and changing activities when instructed").

### 3. *Interacting and Relating with Others*

For this domain, ALJs consider:

> a child's ability to initiate and respond to exchanges with other people, and to form and sustain relationships with family members, friends, and others. This domain includes all aspects of social interaction with individuals and groups at home, at school, and in the community. Important aspects of both interacting and relating are the child's response to persons in authority, compliance with rules, and regard for the possessions of others. In addition, because communication is essential to both interacting and relating, we consider in this domain the speech and language skills children need to speak intelligibly and to understand and use the language of their

community.

SSR 09-5p, 2009 WL 396026 at * 2 (SSA Feb. 17, 2009).

The ALJ here noted that "[s]chool records reflect . . . [Ford] arguing with his teacher," and all examining and consultative experts found "some issues getting along with others and paying attention." Doc. 12-2 at 14-15. Still, Dr. Nagelberg, for example, reported that Ford was cooperative, polite, and friendly during his examination. Doc. 12-7 at 36. Dr. Tometricia Brown, another examining physician, also reported that his oppositional behaviors improved when on medication. *Id.* at 33.

Certainly evidence exists that indicates Ford has issues getting along well with others. *See, e.g.*, doc. 12-6 at 25 (Ford struggles to make new friends and work with teammates). But the Court cannot reweigh the evidence and decide that his functioning rises to the level of a marked limitation. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *see also Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) ("Simply because the ALJ chose not to adopt further limitations on [the claimant's] ability to walk or stand, does not mean the ALJ did not properly consider the alleged limitations."). It can only decide whether

substantial evidence supports the ALJ's decision. *Dyer*, 395 F.3d at 1210 ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it."). And for the "interacting with others" domain, it does. *Cf. Muhammad ex rel. T.I.M. v. Comm'r of Soc. Sec.*, 395 F. App'x 593, (11th Cir. 2010) (substantial evidence supported less than marked limitation in interaction domain despite treating psychologists contrary conclusion, where child played cooperatively with other children and made friends, but had problems respecting adults in authority, expressing anger, and using language appropriate to the situation).

4. *Moving About and Manipulating Objects*

One of the more self-explanatory domains, this category evaluates a child's ability to move his body from one place to another and how he moves and manipulates objects using gross and/or fine motor skills. *See* 20 C.F.R. § 416.926a(j); SSR 09-6p, 2009 WL 396028 at * 2. The ALJ found no limitation, and rightfully so; nothing in the record indicates otherwise.[7]

---

[7] Both Drs. Marting and Kyle found no limitation, doc. 12-7 at 43, 49, something

5. *Caring for Yourself*

"This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways." Doc. 12-2 at 19 (citing 20 C.F.R. § 416.926a(k)). As with the "moving about" domain, nothing in the record, including Ford's mother's own reporting, shows any limitation to his ability to self-care. The ALJ's conclusion to that effect thus should be affirmed. *Id.*

6. *Health and Physical Well-Being*

The final domain considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's health and functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. *See* 20 C.F.R. § 416.926a(i); SSR 09-8p, 2009 WL 396030 at * 2 (SSA Feb. 17, 2009). Unlike the other five domains, this one does not address typical development and functioning. SSR 09-8p,

---

Ford's mother corroborates. *See* doc. 12-6 at 24. The only physical examination in the record also supports finding no limitation. Doc. 12-7 at 33 (motor examination revealed normal tone, power, coordination, gait, and station). Dr. Nagelberg only evaluated Ford's psychological functioning and so did not address this domain.

2009 WL 396030 at *2. Instead, it addresses how recurrent illness, the side effects of medication, and the need for ongoing treatment affect the child's health and sense of physical well-being. *See id.*

In finding that Ford had a less than marked limitation in this domain, the ALJ noted his asthma diagnosis but found it not a severe impairment. Doc. 12-2 at 12 (citing doctor reports that Ford's asthma caused "mild limitations at best"). Both Drs. Marting and Kyle also found less than marked limitations in this domain. Doc. 12-7 at 43, 49. Notably, Ford's mother did not allege asthma as a disabling impairment, nor did she list any physical impairments on his function report. Doc. 12-2 at 12; doc. 12-6 at 120-29. Although she did testify that Adderall caused insomnia and loss of appetite, doc. 12-2 at 34, she denied that it caused him other side-effects, and, in any case, medical records reflect that he had a normal appetite. Doc. 12-7 at 33. In other words, "such relevant evidence as a reasonable person would accept as adequate" supports the ALJ's conclusion that Ford suffered a less than marked limitation in the health and physical well-being domain.[8] *Mitchell*, 771

---

[8] *Cf. Russell v. Astrue*, 742 F. Supp. 2d 1355, 1377-78 (N.D. Ga. 2010) (asthma posed

F.2d at 782. And because Ford showed no marked limitations in any domain (much less severe limitations), the ALJ properly concluded that his ADHD did not functionally equal a listed impairment. Doc. 12-2 at 20.

## IV. CONCLUSION

Substantial evidence supports the ALJ's conclusion that Ford's ADHD and ODD do not meet or functionally equal a listed impairment and thus that he is "not disabled." Doc. 12-2 at 20. Accordingly, the Commissioner's decision denying benefits should be affirmed.

**SO REPORTED AND RECOMMENDED** this 10㏜ day of September, 2015.

**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**

---

less than marked restriction on claimant where he had occasional hospitalizations and used a nebulizer, but played outside, rode a bike, and participated in gym class).